**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

———————————————————————— x
Allen Rosenberg and Alrose Group LLC, individually on behalf :
of themselves and all others similarly :
situated, :
: Case No.
:
Plaintiffs, :
v. :
:
: CLASS ACTION COMPLAINT
:
Intel Corporation, :
: <u>JURY TRIAL DEMANDED</u>
Defendant. :
:
:
:
———————————————————————— x

Plaintiffs Allen Rosenberg ("Rosenberg") and the Alrose Group, LLC ("Alrose"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Rosenberg and Alrose, which are based on personal knowledge:

## NATURE OF THE ACTION

1. Plaintiffs bring this action against Intel Corporation ("Intel" or "Defendant") on behalf of individuals and businesses who purchased or own devices containing Intel processors with the security flaw known as the "Kernel Flaw," as described below, within the statute of limitations period. Such products are hereinafter referred to as the "Affected Products."

2. Defendant Intel's x86-64x CPUs suffer from a security defect, which causes the CPUs to be exposed to troubling security vulnerabilities by allowing potential access to extremely secure kernel data (the "Kernel Flaw"). The only way to "patch" this vulnerability

1

requires extensive changes to the root levels of the operating system which will dramatically reduce performance of the CPU.

3. The Kernel Flaw renders the Intel x86-64x CPUs unfit for their intended use and purpose. The Kernel Flaw exists in all Intel x86-64x CPUs manufactured since at least 2008. The x86-64x CPU is, and was, utilized in the majority of all desktop, laptop computers, and servers in the United States.

4. Upon information and belief, any Intel processor produced in the past decade contains the Kernel Flaw.

5. Upon information and belief, if left unfixed, the Kernel Flaw renders computers significantly vulnerable to hacking.

6. The patch required to address the Kernel Flaw is called the Kernel Page Table Isolation ("KPTI").  Upon information and belief, the KPTI fix will damage the Kernel Flaw Class members by negatively impacting the performance of their computers by 30% or more.

7. To date, Defendant has been unable or unwilling to repair the Kernel Flaw or offer Plaintiffs and Class members a non-defective Intel CPU or reimbursement for the cost of such CPU and the consequential damages arising from the purchase and use of such CPUs. Indeed, there does not appear to be a true "fix" for the Defect. The security "patch," while expected to cure the security vulnerabilities, will dramatically degrade the CPU's performance. Therefore, the only "fix" would be to exchange the defective x86-64x processor with a device containing a processor not subject to this security vulnerability. In essence, Intel x86-64x CPU owners are left with the unappealing choice of either purchasing a new processor or computer

containing a CPU that does not contain the Defect, or continuing to use a computer with massive security vulnerabilities or one with significant performance degradation.

8. Having purchased a CPU that suffers from this Defect, Plaintiffs and Class members (the "Kernel Flaw Class") suffered injury in fact and a loss of money or property as a result of Defendant's conduct in designing, manufacturing, distributing and selling defective CPUs. Intel has failed to remedy this harm, and has earned and continues to earn substantial profit from selling defective CPUs.

## THE PARTIES

9. Plaintiff Allen Rosenberg is an individual citizen residing in Atlantic Beach, New York. Rosenberg purchased a computer with an Intel CPU processor during the Class Period. He was unaware of the CPU defect described herein prior to his purchase of this computer. Had Defendant disclosed such material facts, Plaintiff Rosenberg would not have purchased a computer with this CPU or paid the price that he did.

10. Plaintiff Alrose Group LLC is a New York corporation with its principal place of business located in Woodmere, New York. Alrose purchased Affected Products during the Class Period and currently uses its products to conduct its business. As a result of the Kernel Flaw, Alrose's business data will be at risk until it implements the KPTI fix. If Alrose chooses to implement the KPTI fix, its computer performance will decrease, negatively impacting Alrose's business. Had Defendant disclosed such material facts, Alrose would not have purchased computers with this CPU or paid the price that it did.

11. Defendant Intel is a Delaware corporation with its principal place of business in Santa Clara, California.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) and (b), in that Defendant Intel Corporation ("Intel") is a Delaware corporation, the Kernel Flaw Class members are citizens of every state in the United States and the amount in controversy is reasonably believed to exceed $5,000,000.00.

13. Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## FACTUAL ALLEGATIONS

14. Defendant Intel is one of the leading chip manufacturers in the world. Its "Intel Inside" marketing built widespread brand recognition, and, according to the Steam Hardware and Software Survey, its chips were included in roughly 88% of the Windows computers, and 80% of the Linux computers, used by its respondents.

15. For at least 10 years, Defendant has marketed, distributed, and warranted these defective Intel CPUs in New York and throughout the United States.

16. On or about November 21, 2017, news stories revealed that a large number of Intel processors contain a serious design flaw that creates significant security vulnerabilities for any device that uses Intel processors. The security flaw is in Intel's x86-64 hardware which was first introduced in 2004 and is still in use in the majority of today's processors. [1]

17. In an effort to run as quickly as possible, Intel processors run something called "speculative execution." In essence, the processor attempts to guess what operation is going to be run next so that code can be standing by, ready to execute. When the processor selects what it

---

[1] See https://www.theregister.co.uk/2018/01/02/intel_cpu_design_flaw/ (last visited January 2, 2018).

believes is the next operation, it will fetch the code(s) needed to carry out that operation and have the code(s) on standby. However, Intel's "speculative execute" code may "fetch" secure codes without first performing a security check which would block such a request. So, an innocuous program such as Javascript might be exploited to gain access to extremely secure kernel data.[2]

18. The Kernel Flaw is believed to exist in almost every Intel processor made since at least 2004 regardless of the operating system. Intel's x86-64x processors are the most widely-used chips in virtually all desktop and laptop computers. The Intel processors are also used in most of the large, cloud based servers such as those from Google, Microsoft and Amazon.

19. The Kernel Flaw's presence is material because fixing the Kernel Flaw reduces the performance of the CPUs thereby causing the CPUs to slow down from the performance specifications that Defendant promised, and that consumers and businesses expected when buying a computer with an Intel CPU. The Kernel Flaw is also material because of the security vulnerabilities Intel based CPUs are exposed to.

20. The Kernel Flaw is unprecedented in scope in that it exposes millions and millions of Intel-based computers to critical security vulnerabilities and hacking and the "patch" to cure these security vulnerabilities will result in substantial performance degradation.

21. Intel is aware that its CPUs suffer from the Kernel Flaw that exposes the CPUs to critical security vulnerabilities and that proposed OS-level software patches will slow the performance of these CPU chips.

22. On or about January 2, 2018, it was revealed that the "patch" to this security vulnerability would lead to substantial CPU performance degradation. The "patch" would require

---

[2] *Id.*

5

root level changes to the operating system resulting in a substantial decrease in CPU performance as much as 30-50% by some estimates.

23. Any fix would require extensive changes at the root levels of the operating system software, which would assuredly impact the performance of Intel processor-based machines. More importantly, any "fix" would not only directly impact the performance of a particular user's Intel-based device, but have indirect performance impacts. Countless servers that run internet-connected services in the cloud will see a dramatic degradation in performance, which will have a downstream impact to all users of these servers. Thus, cloud-based services like Microsoft, Google, and Amazon will see performance degradation

24. Intel has failed to cure the Kernel Flaw or replace Plaintiffs' Intel CPUs with non-defective CPUs and offer full compensation required under federal and state law.

## CLASS ACTION ALLEGATIONS

25. Plaintiffs bring this suit as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of all individuals and businesses throughout the nation who purchased an Affected Product during the Class Period. Excluded from the Kernel Flaw Class is Defendant, any person, firm, trust, corporation, officer, director, or other individual or entity in which Defendant has a controlling interest or with which Defendant is related to or affiliated, and the legal representatives, agents, heirs, affiliates, successors-in-interest or assigns of any excluded party. Plaintiffs reserve the right to amend or modify the Class definition in connection with a motion for Class certification and/or the result of discovery. This lawsuit is properly brought as a class action for the following reasons.

26. Plaintiffs also seek certification, to the extent necessary or appropriate, of a subclass of individuals who purchased an Affected Product in the State of New York at any time during the Class Period (the "New York Subclass").

27. The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

28. The Class is so numerous that joinder of the individual members of the proposed Class is impracticable. The Class includes thousands of persons geographically dispersed throughout the United States. The precise number and identities of Class members are unknown to Plaintiffs, but are known to Defendant or can be ascertained through discovery, using records of sales, warranty records, and other information kept by Defendant or its agents.

29. Plaintiffs do not anticipate any difficulties in the management of this action as a class action. The Class is ascertainable, and there is a well-defined community of interest in the questions of law and/or fact alleged herein since the rights of each Class member were infringed or violated in similar fashion based upon Defendant's uniform misconduct. Notice can be provided through sales and warranty records and publication.

30. Questions of law or fact common to the Class exist as to Plaintiffs and all Class members, and these common questions predominate over any questions affecting only individual members of the Class. Among these predominant common questions of law and/or fact are the following:

    a. Whether Defendant's CPUs possess the Kernel Flaw and the nature of that defect;

    b. Whether Defendant made any implied warranties in connection with the sale of the defective CPUs;

    c. Whether Defendant breached any implied warranties relating to its sale of defective CPUs by failing to resolve the Kernel Flaw in the manner required by law;

    d. Whether Defendant was unjustly enriched by selling defective Intel CPUs;

    e. Whether Defendant violated applicable consumer protection laws by selling CPUs with the Kernel Flaw and/or by failing to disclose the Kernel Flaw, and failing to provide the relief required by law; and

    f. The appropriate nature and measure of Class-wide relief.

31. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs and the Class. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

32. Plaintiffs' claims are typical of the claims of Class members. The injuries sustained by Plaintiffs and the Class flow, in each instance, from a common nucleus of operative facts based on the Defendant's uniform conduct as set forth above. The defenses, if any, that will be asserted against Plaintiffs' claims likely will be similar to the defenses that will be asserted, if any, against Class members' claims.

33. Plaintiffs will fairly and adequately protect the interests of Class members.

34. Plaintiffs have no interests materially adverse to or that irreconcilably conflict with the interests of Class members and have retained counsel with significant experience in handling class actions and other complex litigation, and who will vigorously prosecute this action.

35. A class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy, and individual joinder of all Class members is

impracticable, if not impossible because a large number of Class members are located throughout the United States. Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and multiple courts hearing virtually identical lawsuits. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the courts, protects the rights of each Class member and maximizes recovery to them.

## **INJUNCTIVE CLASS RELIEF**

36. Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief. Here, the Defendant has engaged in class-wide conduct concerning the Kernel Flaw. Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiffs do not know if they can rely on Intel's representations or processors in the future.

37. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), and the injunctive Class satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

  a. Numerosity: Individual joinder of the injunctive Class Members would be wholly impracticable. Millions of Affected Products have been sold throughout the United States.

  b. Commonality: Questions of law and fact are common to members of the Class, as described above. All members of the Class have a common cause against

Defendant to remedy the damage caused by the Kernel Flaw and the KPTI. Resolution of these issues would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

   i. Resolution of the issues presented in the 23(b)(3) class;

   ii. Whether members of the Class will continue to suffer harm by virtue of Defendant's conduct; and

c. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the injunctive Class because their claims arise from the same course of conduct as the rest of the Class. Plaintiffs are typical representatives of the Class because, like all members of the injunctive Class, they purchased Affected Products.

d. <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the injunctive Class. Their consumer protection claims are common to all members of the injunctive Class and they have a strong interest in vindicating their rights. In addition, Plaintiffs and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

38. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiffs seek injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class. Any final injunctive relief or declaratory relief would benefit

the entire injunctive Class.

39. Pursuant to Rule 23(b)(2) Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiffs and New York Subclass Members)**

40. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

41. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

42. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Affected Products.

43. There is no adequate remedy at law.

44. Defendant's improper consumer-oriented conduct is misleading in a material way in that it, inter alia, induced Plaintiffs and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

11

45. Plaintiffs and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that was defective and vulnerable to hacking. Accordingly, Plaintiffs and the New York Subclass Members received less than what they bargained and/or paid for.

46. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs and the New York Subclass Members have been damaged thereby.

47. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiffs and the New York Subclass Members)**

48. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

49. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

50. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or

12

> any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

51. Defendant's advertising failed to disclose the known Kernel Flaw in the Affected Products.

52. Plaintiffs and the New York Subclass Members have been injured inasmuch as they the purchased the Products in reliance on Defendant's misrepresentations.

53. Defendant's advertising, induced the Plaintiffs and the New York Subclass Members to buy Defendant's Product.

54. Defendant made its untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

55. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

56. Defendant made the material misrepresentations and omissions described in this Complaint in Defendant's advertising.

57. Defendant's material misrepresentations and omissions were substantially uniform in content, presentation, and impact upon consumers at large.

58. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY
**(On Behalf of Plaintiffs and All Class Members)**

59. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

60. At all times relevant hereto, Defendant Intel designed, manufactured, advertised, promoted, distributed and supplied processors containing the Kernel Flaw.

61. Defendant Intel distributed, supplied, and sold those processors to device manufacturers for inclusion in computers, tablets, servers, and other computing products.

62. Defendant Intel did so intending for such computing products to be sold or provided to individual and business users across the United States and around the world.

63. Defendant's processors were unsafe for use due to the defects in its design, which, via the Kernel Flaw, exposed critical end-user data and systems to hackers and malware.

64. The risks inherent in the processors' design significantly outweigh any benefits from their design.

65. Named Plaintiffs, and the other Class members, would never have knowingly purchased a computer containing a processor with the Kernel Flaw.

66. The defective design of the Intel processors has damaged the named Plaintiffs and the other Class members in an amount to be proven at trial, but which, in the aggregate, is reasonably believed to exceed $1,000,000,000.00.

## FOURTH CAUSE OF ACTION
## PRODUCTS LIABILITY – NEGLIGENCE
**(On Behalf of Plaintiffs and All Class Members)**

67. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

68. Defendant owed Plaintiffs, and each of the Class members, a duty to exercise reasonable care in the design and manufacture of its processors, including a duty to ensure that the design of its processors did not expose critical end-user data and systems to hackers and malware.

69. Defendant knew or should have known that its processors were subject to the Kernel Flaw.

70. Defendant's competitors have manufactured processors not subject to the Kernel Flaw.

71. Defendant was capable of manufacturing processors not subject to the Kernel Flaw.

72. The defective design of the Intel processors has damaged the named Plaintiffs and the other Class members in an amount to be proven at trial, but which, in the aggregate, is reasonably believed to exceed $1,000,000,000.00.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of Plaintiffs and All Class Members)

73. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

74. Defendant and its authorized agents and resellers sold Intel CPUs to Plaintiffs and Class members in the regular course of business.

75. Defendant impliedly warranted to members of the general public, including Plaintiffs and Class members, these CPUs were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it is made, of average worth in the marketplace, or not broken, unworkable, damaged, contaminated or flawed), was of the same

15

quality as those generally acceptable in the trade or that would pass without objection in the trade, were free from material defects and were reasonably fit for the ordinary purposes for which they were intended or used. In addition, Defendant either was or should have been aware of the particular purposes for which such CPUs are used, and that Plaintiffs and the

76. Class members were relying on the skill and judgment of Defendant to furnish suitable goods for such purpose.

77. Pursuant to agreements between Defendant and its authorized agents and re-sellers, the stores Plaintiffs and Class members purchased their defective Intel CPUs from are authorized retailers and authorized CPU service facilities. Plaintiffs and Class members are third-party beneficiaries of, and substantially benefited from, such contracts.

78. Defendant breached its implied warranties by selling Plaintiffs and Class members defective Intel CPUs. The Defect renders the Intel CPUs unmerchantable. Defendant has refused to recall, repair or replace, free of charge, all Intel CPUs or any of their defective component parts or refund the prices paid for such CPUs.

79. The Defect in the Intel CPUs existed when the CPUs left Defendant's and their authorized agents' and retail sellers' possession and thus is inherent in such CPUs.

80. As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiffs and Class members have suffered damages and continue to suffer damages, including economic damages at the point of sale in terms of the difference between the value of the CPUs as warranted and the value of the CPUs as delivered. Additionally, Plaintiffs and Class members either have or will incur economic, incidental and consequential damages in the cost of repair or replacement and costs of complying with continued contractual obligations as well as the cost of

buying an additional CPU they would not have purchased had the CPUs in question not contained the non-repairable Defect.

81. Intel's breach of warranty has damaged the named Plaintiffs and the other class members in an amount to be proven at trial, but which, in the aggregate, is reasonably believed to exceed $1,000,000,000.00.

### SIXTH CAUSE OF ACTION
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
**(On Behalf of Plaintiffs and All Class Members)**

82. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

83. The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.

84. An implied warranty of merchantability arose in connection with the purchases of the Product by Plaintiffs by operation of state law under the Magnuson-Moss Warranty Act, 5 U.S.C. § 2301(7).

85. The Product is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

86. Plaintiffs and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

87. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

88. Defendant breached its implied warranty of merchantability by selling Plaintiffs and Class members defective Intel CPU and thereby violated the Magnuson-Moss Warranty Act.

89. Consequently, Plaintiffs and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial, along with attorney's fees and costs.

**SEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and All Class Members)**

90. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91. Defendant, through misleading representations and omissions, enticed Plaintiffs and members of the Class to purchase the Products.

92. Plaintiffs and the Class members conferred a benefit on Defendant by purchasing the Products.

93. By its wrongful acts, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

94. Defendant benefitted financially from the revenues and other compensation tied to the sale of the Products, which was unjust in light of Defendant's wrongful conduct.

95. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiffs and the Class as the result of its deceptive marketing and advertising practices.

96. Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiffs and the Class members is unjust and inequitable, Plaintiffs seek restitution from, and an

order from the Court disgorging all profits, benefits and other compensation obtained by Defendant due to its wrongful conduct.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request judgment as follows:

(a) Certifying the proposed Class under Rule 23(a) and (b) of the Federal Rules of Civil Procedure;

(b) Awarding Plaintiffs and other members of the Class damages, together with pre- and post-judgment interest thereon, costs, and attorney's fees as authorized by statute;

(c) Awarding Plaintiffs and the Class appropriate injunctive relief, including the replacement or repair of the processors in the Affected Products.

(d) Awarding Plaintiffs and the other Class members such other and further relief as the court deems right and proper.

Dated:  January 9, 2018

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/
By: _____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Adam Gonnelli, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

**KAMERMAN, UNCYK, SONIKER, & KLEIN P.C.**
Akiva M. Cohen
1700 Broadway, 42 Floor
New York, NY 10019
Tel: (212) 400-4930
Fax: (866) 221-6122
Acohen@kusklaw.com


**LEEDS BROWN LAW**
Jeffrey K. Brown
One Old Country Road, Suite 347
Carle Place, New York 11514
Tel : (516) 873-9550
Fax : (516) 747-5024
jbrown@leedsbrownlaw.com


**SHOOP A PROFESSIONAL LAW CORPORATION**
David Shoop
350 S. Beverly Drive, Suite 330
Beverly Hills, CA 90212
Tel: (877)-324-6853
Fax: (323)-677-1836
david.shoop@shoop.law.com

*Counsel for Plaintiffs and the Class*
